UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN JOAQUIN RAPTOR/WILDLIFE RESCUE CENTER and PROTECT OUR WATER,<br><br>Plaintiffs,<br><br>v.<br><br>GREIF PACKAGING, LLC,<br><br>Defendant. | No. 18-cv-00522-DAD-SKO<br><br>ORDER APPROVING CONSENT DECREE<br><br>(Doc. No. 23) |

This matter is before the court on the parties' joint motion to approve the consent decree, filed on November 19, 2018. (Doc. No. 23.) Having reviewed and considered the submissions of the parties, the court determines this matter is suitable for resolution without oral argument. *See* L.R. 230(g). For the reasons set forth below, the court will grant the parties' joint motion and approve the consent decree.

This suit arises from a complaint for declaratory and injunctive relief pursuant to the citizen suit enforcement provision of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"). (Doc. No. 1.) Plaintiffs San Joaquin Raptor/Wildlife Rescue Center and Protect Our Water ("plaintiffs") are a California non-profit corporation and a California non-profit association, respectively. (*Id*. at ¶ 12.) Defendant Greif Packaging, LLC ("defendant") is a California limited liability corporation that operates a manufacturing and

shipping facility located in Merced, California. (*Id.* at ¶¶ 16–19, 100.)

Prior to filing suit, plaintiffs issued a sixty-day notice letter on February 12, 2018 to defendant and state and federal agencies to inform them of defendant's alleged violations of various state water permits and the Clean Water Act. (*Id.* at ¶ 2–3.) Neither the EPA nor the State of California commenced an action within sixty days regarding the alleged violations, thus permitting plaintiff to file suit in this court. *See* 33 U.S.C. § 1365(b)(1)(B).[1] On April 16, 2018, plaintiff filed a complaint in this action, alleging that defendant is unlawfully discharging polluted storm water at its manufacturing and shipping facility located in Merced, California. (Doc. No. 1 at ¶ 11.) Additionally, plaintiffs alleged that defendant was in violation of various filing, monitoring, reporting, and best management practice requirements and other procedural and substantive requirements of numerous state water permits and the Clean Water Act. (*Id.*)

On October 1, 2018, the parties filed a notice of settlement stating that they reached a proposed consent decree resolving the claims in this action. (Doc. No. 18.) On November 16, 2018, the United States Department of Justice, Environmental and Natural Resources Division ("United States") filed a statement of interest, stating that it reviewed the proposed consent decrees in this action and does not object to its entry by the court. (Doc. No. 21.) On November 19, 2018, the parties filed a request for entry of the proposed consent decree. (Doc. No. 23.)

As part of the proposed consent decree, defendant is required to implement best management practices regarding storm water pollution prevention at the Greif Facility. (Doc. No. 23-1 at 5–13.) Defendant also agrees to provide plaintiffs copies of related documents submitted to regional and state boards or agencies regarding storm water quality or reporting; permit plaintiffs to conduct a physical site inspection within one year of the proposed consent decree; and to pay $52,500 to plaintiffs in attorneys' fees and costs and $10,000 for monitoring costs. (*Id.*) Finally, the proposed consent decree provides that defendant will make a payment of $30,000 to the Rose Foundation for Communities and the Environment, which will be used to

---

[1] "The Clean Water Act explicitly allows private citizens to bring enforcement actions against any person alleged to be in violation of federal pollution control requirements." *California Sportfishing Prot. All. v. River City Waste Recyclers, LLC*, 205 F. Supp. 3d 1128, 1148 (E.D. Cal. 2016) (citing *Ass'n to Protect Hammersley v. Taylor Res.*, 299 F.3d 1007, 1012 (9th Cir. 2002)).

advance projects that improve water quality in local watersheds of San Joaquin County. (Doc. No. 23-1 at 13–14.)[2] The consent decree will be effective until July 31, 2020, unless an action plan is required as discussed in paragraph 7(e) of the proposed consent decree. (*See id.* at 10–12; 16–17.)

"A consent decree is 'essentially a settlement agreement subject to continued judicial policing.'" *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) (quoting *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983)). Thus, before approving a consent decree, a district court must independently determine that the proposed agreement is "fundamentally fair, adequate, and reasonable" and "conform[s] to applicable laws." *Id.*; *see also Arizona v. City of Tucson*, 761 F.3d 1005, 1010–14 (9th Cir. 2014). "[T]he district court must balance several factors, including but not limited to: strength of the plaintiffs' case; risk, expense, complexity and possible duration of continued litigation; relief offered in settlement; extent of discovery already completed; stage of proceedings; experience and views of counsel; governmental participation; and reaction of the class members." *Davis v. City & County of San Francisco*, 890 F.2d 1438, 1445 (9th Cir. 1989) (citing *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). Where a government agency is involved in the negotiation of the proposed consent decree, there is a presumption in favor of the decree's enforceability, and courts should pay deference to the agency's judgment. *See S.E.C. v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984).

Given the above, the court concludes this consent decree will provide substantial relief to the parties. The consent decree as proposed is the product of a fair arms-length negotiation process and is fair, reasonable, and adequate, and not illegal, collusive, or against the public

---

[2] Where a proposed consent decree provides the payment of money to a third party for a supplemental environmental project, the United States asks the third party to confirm that it: (1) is a § 501(c)(3) tax-exempt entity; (2) has read the proposed consent judgment; (3) will spend any money it receives for the purposes specified in the judgment; (4) will not use any money received for political lobbying activities; and (5) will submit a letter to the United States describing how the funds will be spent. (Doc. No. 21 at 3.) The United States indicates that the Rose Foundation provided such a letter on October 9, 2018, and that the proposed manner that the money will be expended is consistent with the law and the public interest. (*Id.* at 4.)

interest.  Though a government agency was not involved in the negotiation of the proposed consent decree, the United States' comments regarding and non-opposition to the court's approval further indicate that the proposed consent decree is an appropriate resolution of this case.  *See Pennsylvania Envtl. Def. Found. v. Bellefonte Borough*, 718 F. Supp. 431, 435 (M.D. Pa. 1989) (considering comments from the United States, a nonparty, in approving consent decree in a citizen suit action brought under the Clean Water Act).

For these reasons:

1. Plaintiffs' request for entry of consent decree (Doc. No. 23) is granted;
2. The parties' stipulation and proposed consent decree (Doc. No. 23-1) is approved;
3. The court retains continuing jurisdiction to enforce the consent decree in this action for the duration of the decree (*see* Doc. No. 23-1 at ¶ 12); and
4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **January 3, 2019**

UNITED STATES DISTRICT JUDGE